IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DARREN M. PETERS,<br><br>               Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>               Defendant. | CASE NO. 4:13CV3001<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the denial, initially and on reconsideration, of the Plaintiff's disability insurance benefits ("DIB") under the Social Security Act ("Act"), 42 U.S.C. §§ 401, *et seq.*, and supplemental security income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*

## PROCEDURAL HISTORY

Plaintiff Darren M. Peters ("Plaintiff") filed an application for DIB under the Act (Tr. 182-188) and for SSI (TR 189-193) on June 25, 2010, and July 12, 2010. The claims were denied initially on August 26, 2010 (Tr. 94-97), and on reconsideration December 22, 2010 (Tr. 102-112). On October 7, 2011, following a hearing, an Administrative Law Judge found that Plaintiff was not under a "disability" as defined in the Social Security Act. (Tr. 8.) On November 5, 2012, (Tr. 1) the Appeals Council of the Social Security Administration denied Plaintiff's request for review. After the decision of the Appeals Council, the decision of the ALJ, at that time, stood as the final decision of the Secretary, subject to judicial review under 42 U.S.C. § 405(g).

**FACTUAL BACKGROUND**

A. **Documentary Evidence**

Plaintiff alleges he became disabled on September 23, 2009, because of migraine headaches, foot pain, and back problems. (Tr. 182, 217.) Plaintiff is a high school graduate and completed two years of college. (Tr. 217.) He worked as a mechanic until September 2006. (Tr. 218.) On the date of the ALJ's decision, Plaintiff was forty-six years old. (Tr. 88.) The record also includes medical treatment notes that pre-date Plaintiff's alleged disability. Emergency room records show Plaintiff was admitted on September 14, 2006, after someone assaulted him with a baseball bat. (Tr. 355.) Plaintiff was diagnosed with a cerebral contusion and scalp lacerations. (Tr. 355, 357, 387.) The hospital discharged Plaintiff on September 22, 2006. (Tr. 387.)

On January 9, 2007, Plaintiff underwent a discectomy procedure to repair a cervical-disk herniation. (Tr. 394–95.) Beginning in May 2009, Plaintiff received treatment at a pain clinic. (Tr. 285.) His treatment included therapeutic injections and prescriptions for a muscle relaxer and Oxycodone (Tr. 288, 289, 290, 291, 292, 293, 296.) On October 20, 2009, Plaintiff met with J. Meyer, M.D., a physician at the pain clinic. (Tr. 297–99.) Plaintiff complained of low back pain that worsened over the course of the day. (Tr. 297.) Dr. Meyer noted that Plaintiff's Oxycodone did not control his pain very well, and prescribed morphine. (Tr. 298.) During a follow-up appointment on November 18, 2009, Plaintiff reported that his current medications did not work very well. (Tr. 300, 301.)

During a January 12, 2010, appointment with Dr. Meyer, Plaintiff reported feeling "wired" on his current medications. (Tr. 303.) Dr. Meyer observed mild to moderate

lumbar muscle spasms, and mild to moderate tenderness in Plaintiff's spine. (Tr. 305.) Dr. Meyer noted that Plaintiff planned to see a spine surgeon. (Tr. 305.)

Peter Lennarson, M.D., a neurosurgeon, examined Plaintiff on February 19, 2010. (Tr. 272–73.) Dr. Lennarson said he could not complete a "disability form" because he was not Plaintiff's regular doctor. (Tr. 272-73.) Dr. Lennarson diagnosed Plaintiff as having pseudo-arthritis. (Tr. 272.) He advised Plaintiff that updated diagnostic scans would be needed. (Tr. 272.)

Plaintiff returned to the pain clinic and saw Burt McKeag, M.D., on July 21, 2010. (Tr. 306–08.) Dr. McKeag noted that Plaintiff was stable on his current medications, although pain relief remained inadequate. (Tr. 307.) He refilled Plaintiff's prescriptions. (Tr. 307.)

Paul Sheets, a physical therapist, completed a consultative examination for the agency on August 18, 2010. (Tr. 315–17.) Plaintiff said he had to lie down for most of the day because of back pain. (Tr. 315.) Plaintiff also said he mowed his yard with a riding mower, and helped care for his two-year-old child. (Tr. 316.) During testing, Mr. Sheets observed that Plaintiff had full arm and leg strength. (Tr. 316.) A seated straight-leg-raise test was negative. (Tr. 316.) Mr. Sheets noted that Plaintiff changed positions several times during the evaluation, and leaned to the right while sitting. (Tr. 317.)

Jerry Reed, M.D., a non-examining agency medical consultant, reviewed Plaintiff's medical records on August 23, 2010. (Tr. 318–26.) Dr. Reed assessed Plaintiff with pseudo-arthritis of the lumbar spine. (Tr. 318.) He determined Plaintiff could lift up to 20 pounds occasionally and up to 10 pounds frequently, and could stand or walk at least two hours and sit for about six hours in an eight-hour workday. (Tr. 319.) Dr. Reed

3

added that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl, but should not be exposed to hazards. (Tr. 320, 322.)

Dr. McKeag examined Plaintiff at the pain clinic on October 21, 2010. (Tr. 332–33.) Plaintiff said he could not take some pain medications because they caused migraines. (Tr. 332.) Dr. McKeag prescribed a muscle relaxer and Oxycodone. (Tr. 333.) Glen Knosp, M.D., a second non-examining medical consultant, reviewed Plaintiff's records on December 16, 2010. (Tr. 334.) Dr. Knosp affirmed Dr. Reed's assessment. (Tr. 334.)

Plaintiff saw John West, M.D., a general practitioner, on March 7, 2011. (Tr. 440–42.) Plaintiff reported headaches and back problems that started after he was assaulted. (Tr. 440.) Plaintiff told Dr. West he took over-the-counter pain medication, but also took Oxycodone when his pain was severe. (Tr. 440.) Plaintiff reported he usually would not sit in a chair for more than an hour at a time because of his pain. (Tr. 440.) During Dr. West's examination, Plaintiff had full range of motion and normal strength in his arms and legs. (Tr. 441.) He had limited lumbar flexion, but demonstrated near-full side bending. (Tr. 441.) Plaintiff walked with an "unremarkable" gait, and could walk on his heels and toes without difficulty. (Tr. 441.) Dr. West diagnosed headaches and low back pain, and counseled Plaintiff on exercise, smoking cessation, and "symptomatic care" including use of over-the-counter pain medications. (Tr. 441.)

During a January 14, 2011, appointment with Dr. McKeag, Plaintiff complained that Oxycodone did not control his pain very well. (Tr. 337.) He also said he was going to school. (Tr. 337.) Dr. McKeag refilled Plaintiff's Oxycodone. (Tr. 338.) During a follow-

up visit on May 6, 2011, Dr. McKeag did not refill Plaintiff's prescription because Plaintiff planned to get medication from another provider. (Tr. 336.)

**B.    Testimony at the Administrative Hearing**

During the August 30, 2011, hearing, Plaintiff testified he lived with his two children—a three-year-old daughter and an eighteen-year-old son. (Tr. 57.) Plaintiff testified that he had looked after his daughter "ever since she was born." (Tr. 68.) He also drove his son to and from school each day. (Tr. 58.) Plaintiff testified he mowed the lawn with a riding mower. (Tr. 64.) He said his wife drove him to the hearing, which was 69 miles from their home. (Tr. 58.)

Plaintiff testified he could not sit for any amount of time without pain. (Tr. 60.) Plaintiff explained that he could walk about five feet without shooting pain, and could comfortably lift two to three pounds. (Tr. 65–66.) He testified he had to lie down for six or seven hours during a workday. (Tr. 61.) Plaintiff described his current pain level as 10 on a ten-point scale. (Tr. 61.) He explained he did not take his pain medication that morning because he wanted the ALJ to see him without medication. (Tr. 61.)

The ALJ asked a vocational expert to assume a hypothetical claimant who could occasionally lift up to twenty pounds and frequently lift up to ten pounds. (Tr. 74.) She specified that the hypothetical claimant could stand and walk for up to two hours and sit for up to six hours during the workday, but would need to change positions every 30 minutes. (Tr. 74.) The ALJ also specified that the hypothetical claimant could occasionally stoop, but could never climb ladders, kneel, crouch, or crawl, and had to avoid concentrated exposure to hazards and excessive vibration. (Tr. 74.)

5

The vocational expert testified that the hypothetical claimant could not perform Plaintiff's past work, but could perform the jobs of administrative support worker, touch-up inspector, and dowel inspector. (Tr. 74–75.) She explained that the hypothetical claimant could still perform these jobs if he was limited to simple, routine, repetitive tasks in a workplace without fast-paced production requirements. (Tr. 75.)

## STANDARD OF REVIEW

In reviewing a decision to deny disability benefits, a district court does not reweigh evidence or the credibility of witnesses or revisit issues de novo. Rather, the district court's role under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and, if so, to affirming that decision. *Howe v. Astrue*, 499 F.3d 835, 839 (8th Cir. 2007).

"Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The Court must consider evidence that both detracts from, as well as supports, the Commissioner's decision. *Carlson v. Astrue*, 604 F.3d 589, 592 (8th Cir. 2010). As long as substantial evidence supports the Commissioner's decision, that decision may not be reversed merely because substantial evidence would also support a different conclusion or because a district court would decide the case differently. *Frederickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004).

## DISCUSSION

The sole issue before the Court is whether the ALJ adequately addressed Plaintiff's testimony regarding pain. Plaintiff summarizes his basis for appeal stating, "Basically the ALJ's hypothetical was inadequate because the word pain was not

6

included or discussed in the hypothetical when the record clearly disclosed that pain was an issue relative to claimant's ability to work full time." (Filing No. 15 at 10.) It is presumed that Plaintiff's argument is based on the ALJ's duty to examine a claimant's subjective complaints of pain, even if the objective medical evidence does not support such complaints. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). When considering subjective complaints of pain, in addition to the objective medical evidence, the ALJ must consider the claimant's daily activities; the duration, frequency and intensity of the pain; dosages, effectiveness and side effects of medication; and functional restrictions. *Id*. "When making a determination based on these factors to reject an individual's complaints, the ALJ must make an express credibility finding and give his reasons for discrediting the testimony." *Shelton v. Chater,* 87 F.3d 992, 995 (8th Cir. 1996) (citing *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir.1995)).

 Plaintiff argues that the ALJ's ruling was deficient because her hypothetical questions to the vocational expert did not include the word "pain." (Filing No. 15 at 10.) Plaintiff relies on the Eighth Circuit's ruling in *Hall*, where the court reiterated that the ALJ must examine the Polanski factors, and that when rejecting the claimant's subjective complaints of pain, the ALJ must make an express credibility finding, complete with the ALJ's reasons for discrediting the plaintiff's testimony. In *Hall*, the ALJ listed some of the plaintiff's activities, but did not state how those activities showed the plaintiff was not suffering, or that the plaintiff could perform a full-time competitive job on a sustained basis. *Id.* The Eighth Circuit concluded that the ALJ's decision was not based on substantial evidence because the ALJ did not expressly find that the plaintiff's complaints of pain were not credible. *Id.*

7

In contrast to *Hall*, the ALJ here made express credibility findings about Plaintiff's subjective complaints of pain. The ALJ's questions to the vocational expert matched her finding with respect to the Plaintiff's residual functional capacity ("RFC"). The RFC is defined as the most that a claimant can do despite his physical or mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In discussing her RFC analysis, the ALJ considered many factors, and made express findings regarding Plaintiff's subjective testimony. The ALJ stated that some of Plaintiff's testimony was credible, and found Plaintiff had severe impairments that included back problems, headaches, and pseudo-arthritis. (Tr. 13.) The ALJ also concluded that Plaintiff retained the functional capacity to perform light work with several additional limitations. (Tr. 14.) These limitations were that Plaintiff could only stand or walk for two hours during an eight-hour workday, had to alternate positions every thirty minutes, and was limited to simple, routine, repetitive tasks in a work environment with no fast-paced production requirements. (Tr. 14.)

The ALJ also made express findings about those portions of Plaintiff's subjective complaints that the ALJ did not find credible. For example, the ALJ noted that Plaintiff testified that he cared for his three-year old daughter "ever since she was born." (Tr. 68.) The ALJ stated that this was demanding activity and appeared inconsistent with Plaintiff's claims that he had to lie down for most of the day and experienced continued severe back pain. (Tr. 17.) Similarly, the ALJ found that Plaintiff's ability to ride a lawnmower and drive contradicted his testimony that he was in constant pain while sitting. (Tr. 16, 17.) The ALJ specifically referenced that the Plaintiff sat throughout the 69-mile trip to the hearing, and previously noted that he could sit in a chair for 60 minutes. (Tr. 17.) The ALJ also considered Plaintiff's use of over-the-counter pain

8

medication. Plaintiff told Dr. West that he relied on over-the-counter pain medication; only used Oxycodone intermittently; and did not take any medication before the hearing. (Tr. 16-17.) The ALJ stated that the severity of Plaintiff's complaint of pain was inconsistent with his medication usage. (Tr. 17.) The ALJ also considered Plaintiff's low earnings history, and concluded that the record suggested his current unemployment may be unrelated to his medical condition. (Tr. 16, 17.)

In sum, in making her findings about the Plaintiff's RFC, the ALJ considered Plaintiff's daily activities, his use of minimal pain medications, his history of low earnings, his residual ability, and the objective evidence, and expressly stated that these factors reduced Plaintiff's credibility. (Tr. 16–17.) The Eighth Circuit has stated that if "the ALJ did not explicitly discuss each *Polaski* factor in a methodical fashion," but "acknowledged and considered those factors before discounting [the claimant's] subjective complaints of pain . . . . An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where . . . the deficiency probably had no practical effect on the outcome of the case." *Brown v. Chater,* 87 F.3d 963, 966 (8th Cir.1996) (citing *Benskin v. Bowen,* 830 F.2d 878, 883 (8th Cir.1987)). The ALJ's RFC analysis expressly addressed each of the *Polaski* factors in discrediting Plaintiff's credibility, even if not labeled as such in the decision. Accordingly, the ALJ's questions to the vocational expert accounted for Plaintiff's complaints of pain that the ALJ found credible. *See Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) ("The fact that the ALJ omitted from his hypothetical questions those aspects of Harvey's subjective complaints that the ALJ considered non-credible does not render the questions faulty.").

## CONCLUSION

For the reasons discussed, the Court concludes that the Commissioner's decision is supported by substantial evidence on the record as a whole and should be affirmed. Accordingly,

IT IS ORDERED:

1. The Commissioner's decision is affirmed;

2. The appeal is denied; and

3. Judgment in favor of the Defendant will be entered in a separate document.

Dated this 13th day of January, 2014.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge